Submitted on remand from the United States Supreme Court February 22, 2006, defendant's sentence of death vacated; court's decision in *State v. Guzek*, 336 Or 424, 86 P3d 1106 (2004), modified; case remanded to circuit court for further proceedings February 15, 2007

STATE OF OREGON,
*Plaintiff on Review,*

*v.*

RANDY LEE GUZEK,
*Defendant on Review.*

(SC S45272)

153 P3d 101

Mary H. Williams, Solicitor General, Salem, filed the brief for plaintiff on review. With her on the brief was Hardy Myers, Attorney General.

J. Kevin Hunt, Oregon City, filed the brief for defendant on review. With him on the brief was Richard L. Wolf.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Riggs, Justices, and Walters, Justice pro tempore.**

GILLETTE, J.

** Carson, J., retired December 31, 2006, and did not participate in the decision of this case. Riggs, J., retired September 30, 2006, and did not participate in the decision of this case. Balmer, Kistler, and Linder, JJ., did not participate in the consideration or decision of this case.

## GILLETTE, J.

This case is before us on remand from the United States Supreme Court. In our prior decision, we vacated defendant's death sentence and remanded his case to the trial court for a new sentencing proceeding. *State v. Guzek*, 336 Or 424, 86 P3d 1106 (2004) (*Guzek III*). In doing so, we addressed not only the issue that required (as the state conceded) remand for a new trial, but also several issues of law that defendant had raised and that we concluded were likely to arise on retrial. One of those issues involved the admissibility of certain "alibi" evidence at defendant's sentencing. We held that the Eighth Amendment to the United States Constitution provided defendant with the right to introduce that evidence during the penalty phase of his trial. The State of Oregon petitioned for a writ of certiorari from the United States Supreme Court concerning that determination and, on review, the Court subsequently vacated our decision in *Guzek III* and remanded the case to us for further proceedings not inconsistent with its opinion. *Oregon v. Guzek*, 546 US 517, 126 S Ct 1226, 163 L Ed 2d 1112 (2006). The parties have provided further briefing on the question, and we now are able to announce our ruling.

We begin by briefly summarizing the procedural history of this matter. Defendant was charged, along with two associates, with the 1987 shooting deaths of Rod and Lois Houser. Defendant's associates, who were with him during those shootings, confessed their involvement in the crime and named defendant as their leader. Despite alibi testimony provided by his grandfather and his mother during the guilt phase of his trial, a jury convicted defendant on two counts of aggravated murder and sentenced him to death. Following the penalty phase of that trial, however, this court concluded that the sentencing court had erred by not allowing the jury an opportunity to consider evidence that may have militated against a death sentence. As a result, this court affirmed defendant's two convictions, but vacated the death sentence and remanded the case for a new penalty-phase proceeding. *State v. Guzek*, 310 Or 299, 797 P2d 1031 (1990) (*Guzek I*).

At the conclusion of the second sentencing proceeding, a jury again sentenced defendant to death. On review,

however, this court concluded that certain victim-impact evidence introduced by the state at the new proceeding was not relevant to any of the questions that a jury was required to consider under the statutory framework for imposition of the death penalty set out at ORS 163.150(1)(b) (1989). Consequently, the court remanded this case for a third sentencing proceeding. *State v. Guzek*, 322 Or 245, 906 P2d 272 (1995) (*Guzek II*).

Defendant's third penalty-phase proceeding began in 1997. At that new sentencing trial, defendant unsuccessfully sought to have the trial court instruct the jury regarding the possibility of a true-life sentence as a penalty option. To facilitate that instruction, defendant expressly waived all *ex post facto* guarantees that otherwise would have prevented the jury from considering such a sentencing option. Again, a jury sentenced defendant to death but, on review, this court held that the trial court's failure to give the requested instruction was reversible error. As a result, this court concluded that it again was required to vacate defendant's death sentence and to remand the case to the trial court for further proceedings. *Guzek III*, 336 Or at 430.

In *Guzek III*, we noted that defendant had raised other issues on review and we went on to address those that seemed likely to arise on remand. *Id.* Among them was a question regarding the admissibility at sentencing of defendant's previously adduced alibi evidence. *Id.* at 450. At his third penalty-phase proceeding, defendant had offered a transcript of his grandfather's earlier alibi testimony, as well as the live alibi testimony of his mother, as evidence militating against a death sentence. The trial court had excluded that evidence on relevance grounds. With regard to the transcript of the grandfather's testimony, we wrote in *Guzek III*:

> "The transcript of defendant's grandfather's testimony—like the transcript of any other witness's testimony—was relevant and subject to consideration in the penalty phase, regardless of its substance, because it was 'previously offered and received' during the trial on the issue of guilt. ORS 163.150(1)(a); *see also* ORS 138.012(2)(b) (if reviewing court vacates death penalty, transcript of all testimony, all exhibits, and other evidence properly admitted in prior guilt- and penalty-phase proceedings deemed admissible in

> remanded penalty-phase proceeding). The trial court there-
> fore erred in sustaining the state's objection to admission of
> that evidence."

*Id.* at 451. As to the admissibility of mother's live alibi testi-
mony at defendant's sentencing, this court—citing cases from
the United States Supreme Court—concluded that the
Eighth Amendment to the United States Constitution
required the jury to consider such evidence for sentencing
purposes. *Id.* at 462-63. Two members of this court dissented
from both of those rulings. *See id.* at 466-80 (Gillette, J.,
joined by Carson, C. J., dissenting).

     As noted, the State of Oregon petitioned the United
States Supreme Court for a writ of certiorari respecting the
alibi evidence ruling, and that Court allowed the petition. On
review, the Supreme Court chose to address directly only the
narrow question of the mother's proffered live testimony. As
to that testimony, the Court held that the state did indeed
possess the authority to regulate, through exclusion, the live
alibi testimony that defendant had sought to present. *Oregon
v. Guzek*, 546 US at 525-27, 126 S Ct at 1232-33. According to
the Court, three factors influenced that determination:
(1) traditional sentencing concerns focused on *how* a defen-
dant had acted in committing a particular crime—by con-
trast, the alibi evidence at issue in the case at hand focused
only on *whether* defendant had committed the crime at all;
(2) the parties already had litigated the issue of defendant's
guilt and a jury properly had found him culpable in the
Housers' murders, with the result that the alibi evidence that
defendant sought to present was a collateral attack on a pre-
viously determined matter—an action typically discouraged
as a matter of law; and (3) any negative impact arising from
restrictions on defendant's ability to introduce new alibi evi-
dence at sentencing was minimized by Oregon statutes
giving defendant the right to present, at resentencing, all
innocence-related exhibits and transcripts from his original
trial. *Id.* Ultimately, the Court concluded that "the Eighth
Amendment does not protect defendant's right to present the
evidence at issue here." *Id.* at 1233. Noting that defendant
also had asserted that he was nevertheless entitled to intro-
duce that evidence to impeach any testimony from his asso-
ciates that might be introduced at resentencing, the Court

opined that this court was free to consider that question on remand. *Id.*

Following remand from the United States Supreme Court, this court asked the parties to submit supplemental briefing on three questions related to defendant's use of alibi-related testimony at his new sentencing proceeding: (1) whether such testimony is admissible under ORS 138.012(2)(b);[1] (2) whether such testimony is admissible to impeach the testimony of other state witnesses; and (3) where, in the trial court record, had defendant preserved his arguments regarding those two issues. We turn first to our preservation-related inquiry.

■     On review, the state contends that defendant failed to preserve either of the alibi-related issues noted above. According to the state, defendant offered his mother's live alibi testimony at his third penalty-phase proceeding solely in mitigation of the propriety of a death sentence in his case. Consequently, the state argues, the other alibi-related issues present here were not preserved, because

> "[t]he argument portion of defendant's opening brief did not include any argument that the alibi testimony was offered as impeachment evidence or was improperly excluded as impeachment evidence. Nor did defendant argue that the prior transcript testimony of his mother and grandfather was admissible under ORS 138.012(2)(b)."

(Internal citation to excerpt of record omitted.)

This court has made clear, however, that it may entertain such supplemental arguments on review despite the fact that they were not presented in the parties' opening briefs if those arguments nevertheless were encompassed within a broad legal issue that was adequately preserved and presented for the court's consideration. *See, e.g., Gadda v. Gadda*, 341 Or 1, 7-8, 136 P3d 1099 (2006) (argument presented for the first time on review in supplemental brief that husband had properly served notice of appeal to wife by mail or by delivery in domestic relations case was adequately preserved where broad legal issue before the court was whether husband had accomplished service by legally sufficient

---

[1] The text of ORS 138.012(2)(b) is set out *post*, 342 Or at 351.

means). Here, after examining the supplemental briefing and excerpt of record provided by defendant, it is apparent that, after remand of defendant's initial death sentence, the admissibility of alibi evidence at the penalty phase of defendant's trial became an ongoing issue that was placed before the trial court on various occasions and rejected each time. Moreover, on review, defendant expressly assigned error in his opening brief to the trial court's exclusion of "any defense evidence of alibi or other evidence tending to negate guilt, in answer to and in impeachment of the transcript testimony of [codefendants]." As a result, we conclude that the broad legal issue regarding the admissibility of alibi evidence at the sentencing portion of defendant's trial was sufficiently preserved below and therefore is properly before this court for consideration. Consequently, this court also may consider the supplemental questions encompassed by that issue that we have asked the parties to address. We turn now to those questions.

As noted above, we first asked whether the mother's alibi testimony was admissible under ORS 138.012(2)(b). ORS 138.012 focuses generally on the automatic review of death sentences and allows, among other things, a reviewing court to set aside a death sentence and remand for new penalty-phase proceedings if the reviewing court determines that prejudicial error occurred at the sentencing below. Paragraph (2)(b) of that statute sets forth the type of evidence that is admissible in the new proceedings. It provides:

> "The new sentencing proceeding is governed by the pro-visions of ORS 163.150 (1), (2), (3) and (5). *A transcript of all testimony and all exhibits and other evidence properly admitted in the prior trial and sentencing proceeding are admissible in the new sentencing proceeding.* Either party may recall any witness who testified at the prior trial or sentencing proceeding and may present additional relevant evidence."

(Emphasis added.)

Defendant contends that his mother's alibi-related testimony is indeed admissible under ORS 138.012(2)(b). He argues that such evidence is relevant and admissible *per se* by virtue of the fact that ORS 138.012(2)(b) expressly allows

defendants involved in remanded capital sentencing proceedings to recall any witness who properly testified at any point during the prior trial and further provides that those defendants also may introduce all previously admitted evidence and exhibits.

The state, in response, argues that the mother's live alibi testimony is admissible only to the extent that it is relevant to the specific questions that the penalty-phase jury must address. According to the state, the mother's alibi evidence—if believed—tends to show only that defendant did not commit the aggravated murders of which he has been convicted. Because defendant's guilt is not at issue in the penalty phase, the state continues, that testimony is not relevant and therefore may be excluded. As to the transcripts of that same testimony taken from defendant's first trial, the state acknowledges that, in *Guzek III*, the court majority—citing ORS 163.150(1)(a) and ORS 138.012(2)(b)—declared such transcript evidence to be

> "relevant and subject to consideration in the penalty phase, regardless of its substance, because it was 'previously offered and received' during the trial on the issue of guilt."

*Guzek*, 336 Or at 451 (quoting ORS 163.150(1)(a)). The state, however, respectfully suggests that this court has overstated the role of such evidence in remanded penalty proceedings because no statute presently provides that prior transcript testimony is indeed relevant regardless of its substance.

■ We turn first to the question of how—if at all—the prior transcript testimony at issue here can be used under ORS 138.012(2)(b). To answer that question, it is helpful to first understand the relationship between ORS 138.012 and ORS 163.150, and the common history that those statutes share.

Taken together, ORS 138.012 and ORS 163.150 cover virtually all the aspects of sentencing and sentencing review that accompany an aggravated murder conviction. ORS 163.150 is aimed primarily at the initial sentencing proceeding that takes place in such cases. That statute calls for that proceeding to be conducted "in the trial court before the

trial jury as soon as practicable." ORS 163.150(1)(a). More-over, should an original juror be unable to perform a juror's function at sentencing, the statute also requires the trial court to draw randomly the name of an alternate to be seated on the sentencing jury, "notwithstanding the fact that the alternate juror did not deliberate on the issue of guilt." *Id.* The statute goes on to establish a template for conducting sentencing proceedings in aggravated murder cases and delineates the sentencing issues that a jury must consider, one of which is "[w]hether the defendant should receive a death sentence." ORS 163.150(1)(b)(D). Among other things, ORS 163.150(1)(a) provides:

> "In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence including, but not limited to, victim impact evidence relating to the personal characteristics of the victim or the impact of the crime on the victim's family and any aggravating or miti-gating evidence relevant to the issue in paragraph (b)(D) of this subsection; however, neither the state nor the defen-dant shall be allowed to introduce repetitive evidence that has previously been offered and received during the trial on the issue of guilt. The court shall instruct the jury that all evidence previously offered and received may be considered for purposes of the sentencing hearing."

ORS 138.012, by contrast, addresses (1) the direct review of death sentences meted out in the proceedings cov-ered by ORS 163.150; and (2) the type of evidence that is admissible on remand should those death sentence proceed-ings be tainted by prejudicial error. Currently, the provisions of ORS 163.150 and ORS 138.012 are distinct from each other in the organizational scheme of the Oregon Revised Statutes. Prior to 1999, however, the text of ORS 138.012 was wholly contained within ORS 163.150 as an integral part of the lat-ter statute. In 1999, the legislature separated the respective provisions of each statute, thereby creating ORS 138.012. Or Laws 1999, ch 1055, §§ 1-2. Before that occurred, however, this court decided *State ex rel Carlile v. Frost*, 326 Or 607, 956 P2d 202 (1998), and, in the process, construed *former* ORS 163.150(5)(d) (1997), the provision that subsequently would become ORS 138.012(2)(b) in 1999.

Like defendant in this case, the defendant in *Carlile* also had been convicted of aggravated murder and sentenced to death. Prejudicial error at sentencing, however, had forced this court twice to vacate that sentence, each time remanding the case to the trial court for a new penalty-phase proceeding. Before his third sentencing proceeding, the defendant filed a motion *in limine* seeking to suppress 53 items of state evidence that had been admitted in the previous guilt and penalty phases of his trial. The trial judge ruled in defendant's favor with regard to certain evidence relating to his future dangerousness, and the state subsequently sought a writ of mandamus challenging the propriety of the resulting suppression order.

At the time that this court took up that issue, *former* ORS 163.150(5)(d) (1997) provided:

> "The new sentencing proceeding is governed by the provisions of subsections (1) and (2) of this section. A transcript of all testimony and all exhibits and other evidence properly admitted in the prior trial and sentencing proceeding *shall be admissible* in the new sentencing proceeding. Either party may recall any witness who testified at the prior trial or sentencing proceeding and may present *additional relevant evidence.*"

(Emphasis added.) The defendant in *Carlile* argued that *former* ORS 163.150(5)(d) (1997) required the trial court to engage in "an analysis of relevance and a process of 'balancing' under OEC 403 to determine anew whether to admit evidence that was introduced during a prior proceeding." *Carlile*, 326 Or at 617-18 (internal footnote omitted). Drawing on the plain text of the statute, however, this court disagreed:

> "Once again, we begin our analysis of the statute with an examination of its text and context, in an effort to ascertain the legislature's intent. The text of [*former*] ORS 163.150(5)(d) [(1997)] is clear. It provides that evidence properly admitted at the prior proceedings 'shall' be admissible at a penalty-phase retrial. *Because of the use of the word 'shall' in the statute, the court has no discretion*

> *whether to admit evidence at the resentencing, if that evidence was properly admitted during the previous proceedings.* The statute thus directs the court at the penalty-phase retrial to admit all previously admitted evidence, so long as the earlier court committed no legal error in admitting that evidence."

*Id.* at 617. Ultimately, this court concluded that the defendant's construction of *former* ORS 163.150(5)(d) (1997) was inconsistent with the statute's mandatory wording, which the court had held in similar cases to preclude consideration of relevance and prejudice. *Id.* at 618. Shortly thereafter, the legislature removed those particular provisions from ORS 163.150 (1997) and enacted ORS 138.012 in its place.

Ordinarily, *Carlile* would mark the end-point of our inquiry into the penalty-phase admissibility of the transcripts at issue in this case. If ORS 138.012(2)(b) simply had imported the text of *former* ORS 163.150(5)(d) (1997) into a new statutory numbering scheme, then the decision in *Carlile* would be sufficient to demonstrate that, in the penalty phase of an aggravated murder trial, previously admitted transcript testimony is admissible regardless of relevancy considerations.

■ However, when the legislature created ORS 138.012(2)(b) from provisions that had previously existed as *former* ORS 163.150(5)(d) (1997), it changed the phrase "shall be admissible" in the former statute to "are admissible" in the new statute. As a general rule,

> "when a statute has been construed by the court of last resort of the state and is later reenacted, it is deemed that the legislature has adopted the court's construction *unless the contrary purpose is clearly shown*."

*State v. Ford*, 310 Or 623, 637 n 21, 801 P2d 754 (1990) (emphasis added); *see also Overland et al. v. Jackson et al.*, 128 Or 455, 463-65, 275 P 21 (1929) (discussing rule). The question, then, is whether the textual change that accompanied the enactment of ORS 138.102(2)(b) clearly demonstrates a legislative intent to countermand this court's holding in *Carlile*.

■     Upon consideration, we conclude that the legislature's use of the word "are" in place of "shall," without more, falls short of "clearly" showing that the legislature intended to supplant the statute's mandatory command. Indeed, it appears to us that the actual effect is to maintain it. As this court long has acknowledged under its case law, even use of the word "may"—often viewed as a purely discretionary term—can be read to indicate a mandatory requirement when to do so reflects the legislature's intent. *See, e.g., Dilger v. School District 24 CJ*, 222 Or 108, 117, 352 P2d 564 (1960) ("If necessary to carry out the intention of the legislature it is proper to construe the word 'may' as meaning 'shall.' "); *Donaghy v. Oregon-Washington R. & Nav. Co.*, 133 Or 663, 681-82, 288 P 1003 (1930) (in statute providing that contributory negligence "may" be considered by jury, "may" held to mean "must," importing duty to consider contributory negligence); *Hubner v. Hubner*, 67 Or 557, 560, 136 P 667 (1913) (in statute providing that marriage dissolution actions "may" be commenced in county in which either party resides, "may" means "shall" and precludes jurisdiction when parties file actions in counties where neither reside). That said, we find no true ambiguity in the legislative rewording of the statute. Both versions had the same substantive meaning.

Absent evidence of a clearly shown contrary purpose in ORS 138.012(2)(b), we conclude that this court's prior construction of *former* ORS 163.150(5)(d) (1997) in *Carlile* remains valid in its application to this case. That conclusion is in accord with an observation that this court made not long ago in another death sentence case, *State v. Langley*, 331 Or 430, 432 n 1, 16 P3d 489 (2000):

> "In enacting ORS 138.012, the 1999 Legislature renumbered the statute that described this court's review authority in death-penalty cases, but made no substantive change to that authority."

As a result, we hold that, pursuant to ORS 138.012(2)(b), a transcript of all testimony properly admitted in defendant's prior trial and sentencing proceedings—which, in this case, encompasses both the mother's and the grandfather's previously received alibi testimony—is admissible on remand in

defendant's new penalty-phase proceeding without regard to issues of relevancy or balancing.

■ Having addressed the admissibility of transcript alibi evidence at defendant's new sentencing trial, we turn now to consider the same issue as it pertains to the mother's live testimony. As already noted, defendant argues that such testimony is admissible because, in remanded capital sentencing cases, ORS 138.012(2)(b) allows a defendant to recall any witnesses who properly testified at any point during the prior trial and, according to defendant, essentially repeat their previous testimony. That testimony, defendant contends, is admissible *per se* under the statute because, along with the transcripts of prior testimony and previously admitted exhibits, it comprises part of the "other evidence properly admitted in the prior trial and sentencing proceeding." ORS 138.012(2)(b).

That argument fails for several reasons. First, defendant incorrectly has conflated the evidentiary record provision of ORS 138.012(2)(b) with the statute's live testimony provision. Live testimony is not the same as "a transcript of all testimony, and all exhibits and other evidence *properly admitted in the prior trial and sentencing proceeding.*" *Id.* (emphasis added). As the statute's past-tense reference makes clear, the admissibility of those evidentiary elements is predicated on the fact that, at a new sentencing proceeding, each of those elements already is part of the evidentiary record and, as such, is able to stand alone without resort to the multitude of procedures that are part of the adversarial process at trial. The same cannot be said of a witness's live testimony, even if the words spoken on the witness stand have been spoken before.

■ Second, defendant fails to acknowledge that, unlike the transcript testimony discussed above, the plain terms of ORS 138.012(2)(b) make live testimony from a prior witness admissible under the statute only insofar as that testimony encompasses "additional *relevant* evidence." The phrase "relevant evidence" has a well-established meaning and application under Oregon law. OEC 401 of the Oregon Evidence Code provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

That standard of relevancy applies in penalty-phase proceedings. *State v. Stevens*, 319 Or 573, 580, 879 P2d 162 (1994). Except as otherwise provided as a matter of law, "[e]vidence which is not relevant is not admissible." OEC 402.

In *Guzek II*, this court explored the doctrine of relevancy at some length. Among other things, the court held that the function of the doctrine required "that there be some rational relationship between the item of evidence offered by a litigant and *the substantive issues properly provable* in the case." 322 Or at 251 (emphasis added). More specifically, the court recognized the role materiality played in a relevancy analysis:

> "Relevance under OEC 401 merges two traditional concepts—relevance and materiality—into a single definition, using the term 'relevant" to embrace the two. The traditional concept of relevance concerns the relation between the facts in evidence and the conclusions to be drawn from them, while materiality concerns the relation between the proposition for which evidence is offered and the issues in the case. *Under OEC 401, an offered item of evidence may be excluded as irrelevant for either of two quite distinct reasons: (1) because it is not probative (i.e., does not have any tendency to prove or disprove, or to make more probable or less probable) of the fact or proposition at which it is directed, or (2) because that fact or proposition at which the item is directed is not provable in the case, i.e., is not 'of consequence ["material"] to the determination of the action.'* Thus, relevance under OEC 401 is not only a relational concept, it is also a legally substantive or definitional one."

*Id.* (internal citations omitted; brackets in original; emphasis added).

In this case, the live alibi testimony that defendant wishes to present has only one purpose: to convince a sentencing jury of his innocence, even though that jury will be powerless to alter the fact of his conviction. That goal is not relevant in a sentencing proceeding and, unlike the transcript and exhibit provisions of ORS 138.012(2)(b) discussed

above, relevancy clearly is a factor with regard to the live testimony offered under the statute. It is axiomatic that, having been convicted of the aggravated murders at the heart of this matter, defendant's innocence is no longer a "substantive issue properly provable" in this case. Previous trial proceedings already have dispositively adjudicated defendant's guilt, and alibi evidence to the contrary—unless otherwise provided for as a matter of law—is neither relevant nor material for sentencing purposes. On this record, we hold that the mother's live alibi testimony is not relevant in the sentencing context of this case and therefore is not admissible as a matter of state law.

■    Finally, we take up the remaining question before us: is the mother's live alibi testimony admissible to impeach the testimony of other state witnesses? Defendant contends that it is. Specifically, he argues that, under Oregon evidentiary law, he is entitled to impeach the testimony of his codefendants by having his mother testify that he was not present at the crime scene when the murders occurred. Such impeachment evidence, defendant asserts, is a material part of his challenge to the state's assertion that he acted deliberately. We disagree.

■■    Under Oregon law, "a witness may be impeached by evidence that contradicts the witness's testimony on *any independently relevant fact*[.]" *State v. Gibson*, 338 Or 560, 572, 113 P3d 423 (2005) (emphasis added). In a nutshell, that means that a witness "cannot be impeached as to merely collateral matters." *Id.* The test of whether a fact is collateral or not is straightforward: the fact is not collateral if " 'the cross-examining party would have been entitled to prove it as part of and tending to establish its case.' " *Id.* at 573 (quoting *State v. Johnson*, 277 Or 45, 48, 559 P2d 496 (1977)).

As we have demonstrated, however, defendant's culpability in the Housers' deaths has already been determined; it no longer is an independently relevant fact for sentencing purposes. Defendant is not entitled to prove his innocence as part of his sentencing case; at this stage, his guilt is a collateral matter not subject to impeachment. Consequently, we hold that, on this record, the mother's live alibi testimony is

inadmissible for impeachment purposes at defendant's new sentencing proceeding.

Defendant's sentence of death is vacated. The court's decision in *State v. Guzek*, 336 Or 424, 86 P3d 1106 (2004), is modified. The case is remanded to the circuit court for further proceedings.