Argued and submitted January 6, the alternative writ of mandamus is dismissed on mandamus; order of dismissal of the Court of Appeals vacated and case remanded for further proceedings on appeal March 31, 1998

**STATE ex rel Jason CARLILE,**
**Linn County District Attorney,**
*Plaintiff-Relator,*

*v.*

**Jackson L. FROST,**
**Circuit Court Judge, Linn County,**
*Defendant,*

*and*

**Dallas Ray STEVENS,**
*Intervenor.*

(SC S43707;* CA A94916)

**STATE OF OREGON,**
*Petitioner on Review,*

*v.*

**DALLAS RAY STEVENS,**
*Respondent on Review.*

(SC S44065)
(Cases Consolidated)

956 P2d 202

---

* Relating to Linn County Circuit Court Case No. 8802-0368.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for relator and petitioner on review. With her on the briefs were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Diane L. Alessi, Chief Deputy Public Defender, Salem, argued the cause for intervenor and respondent on review. With her on the brief was Sally L. Avera, Public Defender.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Graber, and Durham, Justices.***

GRABER, J.

*** Fadeley J., retired January 31, 1998, and did not participate in this decision; Kulongoski, J., did not participate in the consideration or decision of this case.

## GRABER, J.

In these consolidated cases, the state challenges rulings that the trial court made before the start of a penalty-phase proceeding on remand of a death penalty case. We hold that: (1) the state may appeal the trial court's order excluding evidence from defendant's[1] third penalty-phase proceeding; (2) the trial court erred in issuing the order excluding evidence; and (3) the state is barred from seeking a writ of mandamus ordering the trial court to reverse its decision to instruct the penalty phase jury that it may sentence defendant to life imprisonment without the possibility of parole. Accordingly, we vacate the Court of Appeals' dismissal of the state's appeal on the evidentiary issue, dismiss the alternative writ of mandamus, and deny the peremptory writ of mandamus.

### PROCEDURAL BACKGROUND

In 1988, defendant was sentenced to death after being convicted of aggravated murder and other crimes in connection with the death of a five-year-old girl. *State v. Stevens*, 311 Or 119, 806 P2d 92 (1991). On direct review, this court affirmed defendant's convictions but vacated the sentence and remanded the case for a new penalty-phase proceeding, because "the trial court gave instructions that unconstitutionally limited the way in which the jury could consider mitigating evidence about [defendant]." 311 Or at 148. At the second penalty-phase proceeding, defendant again was sentenced to death. This court again vacated the sentence and remanded the case for another penalty-phase proceeding, because relevant mitigating evidence had been excluded during the second penalty-phase proceeding. *State v. Stevens*, 319 Or 573, 585, 879 P2d 162 (1994).

Before the start of the third penalty-phase proceeding, defendant filed a motion *in limine* seeking to suppress 53 items of evidence that the court had admitted in the earlier guilt-phase and penalty-phase proceedings. The trial court

---

[1] We use the term "defendant" to refer to Stevens, the defendant in *State v. Stevens*, which is the case that is before us on appeal and is the underlying criminal case in the present mandamus proceeding.

conducted an omnibus hearing and entered an order granting that motion in part. The state appealed the order, challenging the suppression of some of the items of evidence. The state then filed a motion for a summary determination of appealability. *See former* ORS 19.034(3) (renumbered in 1997 as ORS 19.235(3)); ORAP 2.35 (providing procedures). Defendant filed a motion to dismiss the appeal, arguing that the state has no right to appeal the suppression order, because it was not made "prior to trial," ORS 138.060(3).

The Court of Appeals granted the state's motion for summary determination of appealability. The court also granted defendant's motion to dismiss the appeal, agreeing with defendant that the suppression order was not made "prior to trial" and that the state therefore could not appeal it. The state petitioned for review of the Court of Appeals' order of dismissal, and we allowed the petition.

In addition, the state filed a petition for a writ of mandamus, challenging two of the trial court's orders: the order granting in part defendant's evidentiary motion *in limine* and an order allowing a jury instruction on the sentencing option of life imprisonment without the possibility of parole. This court issued an alternative writ of mandamus with respect to those two issues and consolidated the mandamus action and the appeal.

## AVAILABILITY OF APPEAL

■   We begin by determining whether mandamus or appeal is the proper route for the state to challenge the trial court's suppression order. In general, this court issues a writ of mandamus only when there is no plain, speedy, and adequate remedy in the ordinary course of the law. *State ex rel Keisling v. Norblad,* 317 Or 615, 623, 860 P2d 241 (1993); ORS 34.110. Thus, this court ordinarily would not entertain a mandamus proceeding if the trial court's suppression order were appealable. It thus becomes pertinent whether the state may appeal an order suppressing evidence made by the trial court before the commencement on remand of the penalty phase of a death penalty case. If the state may do so, the need for this court to exercise its constitutional power to intervene may be lessened or eliminated.

ORS 138.020 limits appeals by the state in criminal cases to those allowed by ORS 138.060. ORS 138.060 lists the circumstances in which the state may appeal in a criminal case. ORS 138.060(3), the section that is relevant here, provides:

> "The state may take an appeal from the circuit court to the Court of Appeals from:
>
> "* * * * *
>
> "(3) An order made prior to trial suppressing evidence[.]"

In interpreting a statute, this court's task is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We begin by looking at the statute's text and context to determine whether an order made before the beginning of a penalty-phase retrial is "[a]n order made prior to trial." *See ibid.* (examination of the text and context of a statute occurs at the first level of analysis). This court's prior interpretations of a statute are part of the first-level textual analysis. *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995). Context includes other related statutes. *PGE*, 317 Or at 611.

The legislature has not defined the phrase "prior to trial" as used in ORS 138.060. "Prior" means "earlier in time or order: preceding temporally * * *: ANTECEDENT, PREVIOUS." *Webster's Third New Int'l Dictionary* 1804 (unabridged ed 1993). With respect to the term "trial," this court has recognized that the term "can have a different meaning in different settings, and under different statutory provisions." *State v. Hattersley*, 294 Or 592, 595, 660 P2d 674 (1983). *See also Pfleeger v. Swanson et al*, 229 Or 254, 257, 367 P2d 406 (1961) ("[t]he word 'trial' is used, both in legal parlance and in statutes, to mean different things"); *Warm Springs Irr. Dist. v. Pacific L. Co.*, 89 Or 19, 22, 173 P 265 (1918) (in interpreting statutory provision, the court noted that the word "trial" can mean different things).

Moving to a contextual analysis, we examine the meaning of the term "trial" in two contexts: the operation of the statutes governing aggravated murder cases, and the operation of the statutes governing omnibus hearings and

the state's appeals from rulings that result from such hearings. We turn first to a consideration of how aggravated murder cases proceed.

"Aggravated murder trials are divided into two phases, the guilt phase and the penalty phase." *State v. Pratt*, 309 Or 205, 210, 785 P2d 350 (1990), *on remand* 316 Or 561, 853 P2d 827 (1993). In most cases, those phases are merely separate phases of the same trial in which the same jury decides, first, whether the defendant is guilty and, second—if the defendant is guilty—whether the defendant should receive the death penalty. *State v. Montez*, 324 Or 343, 348-49, 927 P2d 64 (1996), *cert den* 117 S Ct 1830 (1997).

However, when this court upholds a conviction but finds reversible error in the sentencing phase, a new jury may be impaneled and sworn for the penalty phase on remand. *See* ORS 163.150(5)(a) (if a reviewing court finds prejudicial error in the sentencing proceeding only and remands the case, the trial court may "[i]mpanel a new sentencing jury for the purpose of conducting a new sentencing proceeding" to determine whether the defendant should be sentenced to death or life in prison, with or without the possibility of parole).

The court interpreted a materially identical version of ORS 163.150(5)(a) in *State v. Wagner*, 309 Or 5, 786 P2d 93 (1990). The court was considering what disposition to order when it had upheld the defendant's conviction but had concluded that there was a reversible error in the sentencing phase. ORS 163.150(5)(a) (1989) provided in part that, "[i]f a reviewing court finds prejudicial error in the sentencing proceeding only, the court may set aside the sentence of death and remand the case to the trial court." The trial court could "[i]mpanel a new sentencing jury for the purpose of conducting a new sentencing proceeding." 309 Or at 17 (quoting ORS 163.150(5)(a) (1989)).

The defendant in *Wagner* argued that the foregoing section conflicted with ORS 163.150(1)(a), which requires that, in an aggravated murder case in which a jury finds the

defendant guilty, "[t]he [sentencing] proceeding shall be conducted in the trial court before the *trial jury* as soon as practicable." (Emphasis added.) A new sentencing jury, the defendant contended, could not be a "trial jury" without an entire new trial. *Id.* at 17-18. This court rejected that argument, affirming the conviction and remanding the case for a new sentencing proceeding only. The court held that ORS 163.150(1)(a) "is nothing more than the procedural directive to the trial court in the ordinary course of events. * * * If the state elects to pursue the death penalty [on remand], the new sentencing jury shall be selected in the same manner that the trial jury in a capital case is selected." 309 Or at 17-18.

The statutory provision that a jury other than the one that determined the defendant's guilt or innocence may be impaneled for the penalty phase on a penalty-phase-only remand suggests that the legislature considered the two phases of an aggravated murder case to be separate proceedings in that circumstance. Additionally, this court's holding in *Wagner* suggests that a *sentencing* jury on remand is considered for procedural purposes to be a *trial* jury within the meaning of ORS 163.150. Contextually, therefore, the statutory scheme governing aggravated murder cases suggests that the phrase "prior to trial" in ORS 138.060(3), at least in the context of such cases, encompasses penalty-phase-only remand proceedings.

We next consider statutes pertaining to pretrial rulings and the state's appeals therefrom. ORS 135.037(1) permits a trial court to hold an omnibus hearing "[a]t any time after the filing of the accusatory instrument in circuit court and before the commencement of trial." At such a hearing, the trial court may rule on all pretrial motions, including motions pertaining to suppression of evidence. ORS 135.037(2). The court "may also consider any matters which will facilitate trial by avoiding unnecessary proof or by simplifying the issues to be tried, or which are otherwise appropriate under the circumstances to facilitate disposition of the proceeding." ORS 135.037(3). ORS 135.037(4) requires the trial court to rule on the issues raised in an omnibus hearing "[a]t the conclusion of the hearing and *prior to trial*." (Emphasis added.) For that statute to apply in the context of a penalty-phase-only retrial, the phrase "prior to trial" can mean

only a time before a new jury is impaneled and sworn at the beginning of the penalty phase.

ORS 138.060(3) provides for the state to appeal from, among other things, "[a]n order made *prior to trial* suppressing evidence" (emphasis added), including such an order resulting from an omnibus hearing. To understand the use of the term "prior to trial" in ORS 138.060(3), we consider this court's interpretation in *Hattersley*. The issue there was whether a trial court's order suppressing evidence, coming after jury selection had begun but before the jury had been impaneled and sworn, was one made "prior to trial" and therefore was appealable by the state under ORS 138.060(3). 294 Or at 594. Although that case differs factually from the present one, the court's discussion is instructive. In *Hattersley*, this court determined that the legislature intended to correlate the state's opportunity to appeal in a criminal case with a defendant's right to avoid "double jeopardy." *Id.* at 598. Referring to the interlocutory orders that the state may appeal pursuant to ORS 138.060(3) and (4),[2] the court stated:

> "Because the state cannot appeal from an adverse judgment after jeopardy attaches, * * * the legislature has allowed special provision for these particular interlocutory orders which affect evidence the state considers necessary for its case. We conclude that the legislature intended that these interlocutory appeal opportunities * * * correlate with a defendant's double jeopardy protections." *Id.* at 597-98 (citations omitted).

The concept of protection against former jeopardy applies, in a separate fashion, to the penalty phase itself. Even if a defendant is found guilty (so that the defendant can be subjected to a hearing on the appropriate penalty without being subjected to "double jeopardy" thereby), if a sentencing jury says "no" to any of the four penalty-phase questions,[3]

---

[2] The interlocutory orders referred to in ORS 138.060(3) and (4) are orders suppressing evidence and orders returning or restoring things seized.

[3] ORS 163.150(1)(b) provides:

"Upon the conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

"(A) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

then the defendant cannot be subjected to jeopardy of the death penalty again. That is so as a matter of federal constitutional law. *Bullington v. Missouri*, 451 US 430, 444-46, 101 S Ct 1852, 68 L Ed 2d 270 (1981). Thus, in law, the penalty phase is a type of "trial" to which the concept of "jeopardy" attaches. Moreover, when a defendant faces a penalty-phase-only retrial, the only way to assure that the state's "interlocutory appeal opportunities * * * correlate with [the] defendant's double jeopardy protections" is to hold that jeopardy attaches and the state's opportunity to appeal ceases "when the [penalty-phase] jury is 'impaneled and sworn.'" *Hattersley*, 294 Or at 598 (quoting ORS 131.505(5)(b)).

In summary, the legislature has stated that the purpose of an omnibus hearing is to provide an early, coordinated resolution of legal issues in criminal cases. ORS 135.037(3). This court has stated that the purpose of ORS 138.060 is to give the state an opportunity to obtain an answer to legal rulings limiting what it may offer in evidence, including but not limited to such rulings that result from an omnibus hearing, before presenting its case. *Hattersley*, 294 Or at 597-98. The legislature has provided for a separate, sentencing-only proceeding when there is reversible error only in the penalty phase of an aggravated murder case. ORS 163.150(5)(a). This court has held that the new sentencing jury so impaneled on remand is a "trial" jury for some procedural purposes. *Wagner*, 309 Or at 17-18.

■    Pulling together all those threads, we conclude at the first level of analysis that the phrase "an order made prior to trial suppressing evidence" in ORS 138.060(3) includes an order suppressing evidence before the beginning of a penalty-phase-only retrial. That being so, the state was entitled to appeal the trial court's ruling on defendant's motion *in limine*, and the Court of Appeals erred in dismissing that appeal.

---

"(B) Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

"(C) If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased; and

"(D) Whether the defendant should receive a death sentence."

## ADMISSIBILITY OF EVIDENCE

When this court concludes that the Court of Appeals has erred in not deciding an issue on the merits, it usually remands the case to that court to consider the issue in the first instance. Here, we instead exercise our discretion to consider the issue immediately, because the case is old and because cases involving the death penalty have a high priority. *See* ORS 163.150(1)(g) (automatic review of judgment of conviction and sentence of death has priority over all other cases in the Supreme Court). Accordingly, we turn now to the merits of the evidentiary issue.

The question is whether the trial court properly ruled that certain items of evidence pertaining to "future dangerousness" are inadmissible at the third penalty-phase proceeding. The answer to that question is governed by statute. ORS 163.150(5)(d) provides, in part:

> "A transcript of all testimony and all exhibits and other evidence properly admitted in the prior trial and sentencing proceeding shall be admissible in the new sentencing proceeding."

■■ Once again, we begin our analysis of the statute with an examination of its text and context, in an effort to ascertain the legislature's intent. The text of ORS 163.150(5)(d) is clear. It provides that evidence properly admitted at the prior proceedings "shall" be admissible at a penalty-phase retrial. Because of the use of the word "shall" in the statute, the court has no discretion whether to admit evidence at the resentencing, if that evidence was properly admitted during the previous proceedings. *See Scovill v. City of Astoria*, 324 Or 159, 167 n 7, 921 P2d 1312 (1996) (" 'Shall' in a statute ordinarily is mandatory."). The statute thus directs the court at the penalty-phase retrial to admit all previously admitted evidence, so long as the earlier court committed no legal error in admitting that evidence.

Defendant argues that the statute instead requires the court at the penalty-phase retrial to engage in an analysis of relevance and a process of "balancing" under OEC 403[4]

---

[4] OEC 403 provides:

to determine anew whether to admit evidence that was introduced during a prior proceeding.[5] Defendant's construction of the statute is inconsistent with the mandatory wording of the statute, which this court has held in similar statutes precludes such considerations of relevance and prejudice.

For example, in *State v. Williams*, 313 Or 19, 828 P2d 1006 (1992), *on remand* 322 Or 620, 912 P2d 364, *cert den* 117 S Ct 149 (1996), this court upheld ORS 41.415 against a constitutional challenge. ORS 41.415 directs the trial court to admit photographs of a victim of a homicide, if the photographs are offered, during the prosecution for a criminal homicide, to show the general appearance and condition of the victim while alive. This court concluded: "Defendant's argument that the trial court should not have admitted the photographs, because they were irrelevant or unduly prejudicial, is not well taken. ORS 41.415 directs the trial court to admit such photographs * * *. The statute, in effect, declares the photographs to be relevant and not subject to balancing under OEC 403." *Id.* at 28. *See also State v. King*, 307 Or 332, 334-37, 768 P2d 391 (1989) (OEC 609(1) requires a trial court to admit evidence of prior convictions for the purpose of impeaching a criminal defendant without engaging in OEC 403 balancing).

Nothing in the context of ORS 163.150(5)(d) detracts from its clear textual message. The legislature's intention is clear from an examination of text and context, so we need not advance beyond the first level of analysis. In summary, the trial court erred in granting defendant's motion *in limine*. All evidence that was properly admitted in the earlier guilt- and penalty-phase proceedings also is admissible in the new penalty-phase proceeding.

"TRUE-LIFE" SENTENCING OPTION

The final issue[6] is whether the trial court erred in accepting defendant's "waiver" of an *ex post facto* challenge to

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[5] Defendant does not contend that the earlier courts committed legal error when they admitted the evidence that the state now seeks to introduce again.

[6] This issue arises only in the mandamus context, and not in the appeal.

the application of a 1989 amendment to ORS 163.150(5) that added the sentencing option of life imprisonment without possibility of parole (a "true-life" sentence).[7] The 1989 statutory amendment allows a jury to consider the true-life sentencing option in a penalty-phase retrial of a defendant sentenced to death *after* December 6, 1984. ORS 163.150(5) (1989). In *State v. Wille*, 317 Or 487, 505, 858 P2d 128 (1993), this court held that the retroactive application of a true-life sentence to a defendant who committed aggravated murder *before* July 19, 1989, the effective date of the 1989 amendment, violated the *ex post facto* clauses of the state and federal constitutions.[8]

Defendant argues that he can waive an *ex post facto* violation, as he could most other constitutional rights. He also asserts that the state is not entitled to mandamus, because it filed its petition too late. The state counters (1) that the prohibition against the legislature's enactment of *ex post facto* laws is not a "personal" right that can be waived unilaterally and (2) that its petition is timely.

At defendant's initial trial in 1988, the option of a true-life sentence did not exist. The legislature amended

---

[7] ORS 163.150(5) provides:

"Notwithstanding subsection (1)(a) of this section, the following shall apply:

"(a) If a reviewing court finds prejudicial error in the sentencing proceeding only, the court may set aside the sentence of death and remand the case to the trial court. No error in the sentencing proceeding shall result in reversal of the defendant's conviction for aggravated murder. Upon remand and at the election of the state, the trial court shall either:

"(A) Sentence the defendant to imprisonment for life in the custody of the Department of Corrections as provided in ORS 163.105(1)(c); or

"(B) Impanel a new sentencing jury for the purpose of conducting a new sentencing proceeding to determine if the defendant should be sentenced to:

"(i) Death;

"(ii) Imprisonment for life without the possibility of release or parole as provided in ORS 163.105(1)(b); or

"(iii) Imprisonment for life in the custody of the Department of Corrections as provided in ORS 163.105(1)(c)."

[8] Article I, section 21, of the Oregon Constitution, provides, in part:

"No *ex post facto* law * * * shall ever be passed * * *."

Article I, section 10, of the United States Constitution, provides, in part:

"No State shall * * * pass any * * * ex post facto Law * * *."

ORS 163.150 in 1989 to add the true-life option to penalty-phase retrials. Or Laws 1989, ch 720, § 2; Or Laws 1989, ch 790, § 135b. Before defendant's second penalty-phase trial, which occurred in 1992, defendant asked that the jury be instructed on the true-life option. Relator, the district attorney for Linn County, initially asserted that he had no objection. The next court day, however, relator stated that he had changed his mind and thought that "ethically" he had to object, because "the law does not sustain" true life. Following further colloquy, the trial court decided to grant defendant's request. The court ruled that defendant understood that he was waiving any *ex post facto* objection, that it was in defendant's best interest to do so, and that ORS 163.150(5) stated that the true-life option applied. The state did not petition this court for a writ of mandamus concerning that pretrial ruling, which was issued in January 1992.

■■ A writ of mandamus is awarded, not as a matter of right, but on equitable principles. That being so, we must determine whether that extraordinary remedy is appropriate now in this case, in the light of the procedural history that we have recited. *See State ex rel Fidanque v. Paulus*, 297 Or 711, 717, 688 P2d 1303 (1984) (stating that standard).

In making that determination, the concept of laches is relevant. In *Fidanque*, this court stated:

"This court has long recognized that the concept of laches applies to writs of mandamus:

" 'Laches is a bar to *mandamus*, and a petitioner desiring to avail himself of the benefits of such a writ must act promptly: [citation omitted]. * * *.'

"*Paine v. Wells*, 89 Or 695, 703, 175 P 430 (1918); *Buell* [*v. Jefferson County Court*], 175 Or [402,] 410[, 152 P2d 578, 154 P2d 188 (1944)].

"* * * * *

"The *Paine* court stated very clearly the requirement for speedy action on the part of the relator:

" 'It is well settled that the application for a writ of mandamus must be made within a reasonable time after the alleged default or neglect of duty, and that laches or delay in making an application unless satisfactorily

explained may afford sufficient cause for its denial, particularly when the delay has been prejudicial to the rights of the respondent.'

"89 Or at 703." *Fidanque*, 297 Or at 717-18 (emphasis in original).

In our view, the state has not "satisfactorily explained" its reason for not having sought a writ of mandamus in 1992, after the trial court first ruled, over the state's objection, that it would give a jury instruction on the true-life option. The state's delay of several years in seeking a writ of mandamus concerning this legal issue is "sufficient cause for * * * denial" of its petition.

On mandamus, the alternative writ of mandamus is dismissed. On the appeal, the order of dismissal of the Court of Appeals is vacated and the case is remanded for further proceedings.