On motion to determine jurisdiction, filed October 6, considered and under advisement on November 30, 2021;* state's motion to determine jurisdiction granted, court determines that it has jurisdiction of appeal March 31, 2022

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

JASON VAN BRUMWELL,
*Defendant-Respondent.*

(CC 04C46225) (SC S068918)

507 P3d 258

In defendant's death penalty proceeding, after remand to the trial court following a post-conviction court ruling ordering a new penalty-phase proceeding, the trial court granted defendant's motion to preclude the death penalty in light of Senate Bill 1013 (2019), which significantly changed the aggravated murder statutes and narrowed the crimes punishable by death. The state then initiated appeals to challenge the trial court's order in both the Court of Appeals and in the Supreme Court, and it moved the Supreme Court to determine whether it could appeal a trial court order that granted defendant's motion to preclude imposition of the death penalty and, if so, whether the appeal must be brought in the Supreme Court or in the Court of Appeals. *Held*: The state may appeal the trial court's order precluding the death penalty and the appeal must be brought in the Supreme Court.

The state's motion to determine jurisdiction is granted. The Court determines that it has jurisdiction of the appeal.

Jennifer S. Lloyd, Assistant Attorney General, Salem, filed the motion for appellant. Also on the motion were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Ernest G. Lannet, Chief Defender, Office of Public Defense Services, Salem, filed the response to the motion for respondent.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, and Garrett, Justices, and Nakamoto, Senior Judge, Justice pro tempore.**

_____

* Appeal from Marion County Circuit Court, Audrey J. Broyles, Judge.

** DeHoog, J., did not participate in the consideration or decision of this case.

DUNCAN, J.

The state's motion to determine jurisdiction is granted. The court determines that it has jurisdiction of the appeal.

**DUNCAN, J.**

This criminal case is before us on the state's motion to determine whether it may appeal a trial court order that granted defendant's motion to preclude imposition of the death penalty and, if so, whether the appeal must be brought in this court or the Court of Appeals. For the reasons we explain below, we hold that the state may appeal the order and that the appeal must be brought in this court.

In this case, defendant was charged with two counts of aggravated murder. Following a jury trial, the trial court entered a judgment of conviction and sentence, imposing the death penalty. Defendant later brought a post-conviction relief action, and the post-conviction court ordered a new sentencing proceeding. Consequently, this case was reopened in the trial court, where—because of a law enacted while defendant's post-conviction case was on appeal, Senate Bill (SB) 1013 (2019)—the parties disagreed about whether defendant was subject to the death penalty. To provide necessary context for the parties' arguments, we begin with a brief explanation of (1) the statutes that governed the death penalty when defendant was charged and convicted, (2) the indictment and judgment in defendant's case, and (3) how SB 1013 changed the statutes governing the death penalty.

Aggravated murder is the only Oregon crime subject to the death penalty. Prior to the enactment of SB 1013, Oregon had two categories of murder: "murder" and "aggravated murder." "Murder" was defined to include certain forms of criminal homicide, and "aggravated murder" was defined as "murder *** committed under, or accompanied by," any one of 12 enumerated aggravating circumstances. ORS 163.115(1) (2017), *amended by* Or Laws 2019, ch 635, § 4 (defining "murder"); ORS 163.095 (2017), *amended by* Or Laws 2019, ch 635, § 1 (defining "aggravated murder").

In 2003, while defendant was serving a prison sentence for the aggravated murder of a convenience store employee, defendant and another inmate killed a third inmate, DP. In 2004, a grand jury indicted defendant on two counts of aggravated murder for killing DP. Each count alleged a different aggravating circumstance:

"COUNT 1—The defendants, on or about 09/02/03 in Marion County, Oregon, did unlawfully and intentionally cause the death of [DP], another human being, *defendant having been convicted previously of Aggravated Murder* on 01/24/96 in Lane County Circuit Court of Oregon.

"COUNT 2—As part of the same act or transaction, as alleged in COUNT 1 above, the defendants on or about 09/02/03, in Marion County, Oregon, did unlawfully and intentionally, *while defendant was confined in the Oregon State Penitentiary, a correctional facility*, cause the death of [DP], another human being."

(Emphases added.) Thus, defendant was charged with two counts of aggravated murder for the same killing: one alleging that defendant had been convicted of aggravated murder previously and the other alleging that defendant had been confined in a correctional facility at the time of the charged killing.

Aggravated murder trials proceed in two phases: a guilt phase and a penalty phase. ORS 163.150. During the penalty phase, a jury must answer questions, prescribed by statute, including whether the defendant should be sentenced to death. *Id.* Defendant's case was tried to a jury and, at the conclusion of the guilt phase, the jury found defendant guilty of both counts of aggravated murder. The case proceeded to the penalty phase, at the conclusion of which the jury determined that defendant should be sentenced to death. Thereafter, the trial court entered a "Final Judgment and Sentencing Order" stating that defendant was "convicted of 2 Counts of AGGRAVATED MURDER as charged in Counts 1 and 2" (uppercase in original), which it set out in full. The judgment also stated that the counts "merge for the purpose of this sentencing order" and that defendant was "sentenced to death."

On direct review, this court affirmed the trial court's judgment. *State v. Brumwell*, 350 Or 93, 249 P3d 965 (2011). Defendant then brought a post-conviction relief action, challenging both his convictions and his sentence. The post-conviction court rejected defendant's arguments regarding his convictions but accepted his argument that his trial counsel had failed to provide adequate representation in connection with his sentencing. Accordingly, in 2015,

the post-conviction court entered a judgment denying defendant's request for a new guilt phase but granting his request for a new penalty phase.

Both parties in the post-conviction case appealed the judgment. The Court of Appeals affirmed, and this court denied review. *Brumwell v. Premo*, 297 Or App 498, 501, 443 P3d 661, *rev den*, 365 Or 819 (2019).

While the post-conviction case was on appeal, the legislature enacted SB 1013, which, among other things, revised Oregon's murder statutes to narrow the crimes that can be punished by death. Or Laws 2019, ch 635; *see also State v. Bartol*, 368 Or 598, 602-05, 496 P3d 1013 (2021) (reviewing the legislative history of SB 1013). SB 1013 reclassified the various forms of murder in three ways. First, it redefined "aggravated murder" in ORS 163.095 by deleting the list of forms of murder in the statute and replacing it with a shorter list consisting of forms of murder that the legislature regarded as the most serious. Or Laws 2019, ch 635, § 1; *Bartol*, 368 Or at 623. Second, it converted all the forms of murder that had previously constituted "aggravated murder" to a new, less serious crime: "murder in the first degree." Or Laws 2019, ch 635, §§ 1, 3. And, third, it converted all the forms of murder that had previously constituted "murder" to a new, less serious crime: "murder in the second degree." Or Laws 2019, ch 635, § 4.

As relevant here, under SB 1013, the form of murder alleged in Count 1 of defendant's indictment—that is, murder after having been convicted of aggravated murder previously—is now classified as "murder in the first degree," ORS 163.107(1)(c), and the form of murder alleged in Count 2—that is, murder committed while confined in a correctional facility—is also now classified as "murder in the first degree," ORS 163.107(1)(h).[1] But a murder committed with

---

[1] ORS 163.107 provides, in part:

"(1) 'Murder in the first degree' means murder in the second degree as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"*****

"(c) The defendant committed murder after having been convicted previously in any jurisdiction of any homicide, the elements of which constitute the

both of those aggravating circumstances is now classified as "aggravated murder." ORS 163.095(2)(a).[2]

The changes SB 1013 made to the definitions of the different forms of murder apply to "crimes committed before, on or after the effective date of [SB 1013, September 29, 2019,] that are the subject of sentencing proceedings occurring on or after" that date. Or Laws 2019, ch 635, §§ 30, 31. The parties agree that, because the post-conviction court ordered a new penalty-phase hearing that has yet to occur, SB 1013's changes to the definitions of the different forms of murder apply to this case. But the parties disagree about the effect of those changes.

Defendant's position is that, although he was charged with two counts of aggravated murder as the crime was defined at the time, the conduct he was charged with now constitutes first-degree murder. Consequently, when this case was reopened in the trial court, defendant filed a motion titled "Motion to Preclude Death Penalty," which asked the court for an order "setting this case for a sentencing hearing," as opposed to a penalty-phase proceeding with a jury, as would be required if defendant were subject to the death penalty. *See* ORS 163.150 (governing sentencing for aggravated murder). In his motion, defendant asserted that, as a result of the enactment of SB 1013, his convictions had been "reclassified as first-degree murder—crimes

---

crime of aggravated murder as defined in ORS 163.095, murder in the first degree under this section, murder in the second degree as defined in ORS 163.115 or manslaughter in the first degree as defined in ORS 163.118.

"\* \* \* \* \*

"(h) The defendant was confined in a state, county or municipal penal or correctional facility or was otherwise in custody when the murder occurred."

[2] ORS 163.095 provides, in part:

"As used in ORS 163.105 [(governing sentencing for aggravated murder)] and this section, "aggravated murder" means:

"\* \* \* \* \*

"(2) Murder in the second degree, as defined in ORS 163.115, that is:

"(a)(A) Committed while the defendant was confined in a state, county or municipal penal or correctional facility or was otherwise in custody; and

"(B) Committed after the defendant was previously convicted in any jurisdiction of any homicide, the elements of which constitute the crime of aggravated murder under this section or murder in the first degree under ORS 163.107[.]"

not subject to the death penalty." Therefore, he further asserted, "a sentence of death and all of the associated procedural necessities that go along with that, [was] no longer available."

Anticipating that the state would argue that his convictions "contain the necessary elements for one of the newly enacted crimes constituting aggravated murder," defendant argued that he had not been "charged in one count with what now constitutes aggravated murder"; instead, he had been charged with "two counts of what now constitutes first-degree murder." Defendant further argued that his case had been returned to the trial court "for only one function—resentencing," and, therefore, the state could not "seek to amend charges that have resulted in conviction[s] which have been affirmed."

The state opposed defendant's motion to preclude the death penalty. As defendant had anticipated, the state sought to amend the indictment. The state argued that, when the counts in the indictment were considered together, defendant had been convicted of aggravated murder as it is currently defined. Therefore, the state proffered a "proposed amended indictment" that would convert the two counts into a single count by deleting all of the second count except the portion describing the aggravating circumstance. As authority for its proposed amendment, the state invoked Article VII (Amended), section 5(6), of the Oregon Constitution, which allows a district attorney to file an amended indictment "whenever, by ruling of the court, an indictment * * * is held to be defective in form." The state contended that its proposed amendment was permissible because it was merely one of "form."

In addition, the state argued that the trial court should proceed as if defendant already had been convicted of a single count because, "[b]y law, merger of the two convictions was required" under *State v. Barrett*, 331 Or 27, 10 P3d 901 (2000), *overruled in part on other grounds by Martinez v. Cain*, 366 Or 136, 458 P3d 670 (2020). In *Barrett*, this court held that, when a defendant is convicted of multiple counts of aggravated murder based on one killing, a trial court should "enter one judgment of conviction reflecting the defendant's

guilt on the charge of aggravated murder" that separately enumerates "each of the existing aggravating factors." *Id.* at 37.

Defendant filed a reply, addressing both of the state's arguments. Regarding the state's proposed amendment, defendant argued that the time had passed for an amendment; specifically, he argued that the state could not "alter the indictment in any way after a jury [had] returned a verdict on that indictment and judgment [had been] entered." Defendant also argued that the indictment could not be amended pursuant to Article VII (Amended), section 5(6), because the indictment was not defective in form; according to defendant, the state had made a permissible choice to charge him with two counts of aggravated murder and could not "restart [the] case and rewrite history for purposes of [his] sentencing."

Regarding the state's merger argument, defendant argued that his convictions had never merged. As mentioned, the judgment stated that defendant had been convicted of both counts and it set the counts out in full. In addition, the judgment stated that the counts merged for the purposes of sentencing, which is insufficient to merge counts for the purposes of conviction. *See State v. Lyons*, 324 Or 256, 282 n 32, 924 P2d 802 (1996) (noting that, where a judgment provided that counts of aggravated murder and murder merged for the purposes of sentencing, the Court of Appeals had "remanded for entry of an amended judgment merging the murder counts for purposes of *conviction and sentencing*" (emphasis in original)). Defendant did not dispute that his convictions should have merged under *Barrett*; instead, he pointed out that, "[j]ust as a defendant can waive a merger argument, so can the state." Moreover, he continued, the trial court lacked authority to alter the convictions because they had become final and the case was before the court only for sentencing.

After a hearing, the trial court granted defendant's motion to preclude the death penalty. The state subsequently filed a motion asking the court to modify its order by clarifying "the effect of that order on the proceedings moving

forward." Specifically, the state asked the court to confirm that it intended

> "(1) to sentence the defendant for two counts of first-degree murder as opposed to aggravated murder; and (2) to proceed in that manner because it concluded that[,] based on the passage of Senate Bill 1013 and its amendments to the aggravated murder statute, the defendant now stands convicted of first-degree murder and thus should be sentenced in accordance with ORS 163.107 [(defining and governing sentencing for first-degree murder)]."

Defendant did not object to the state's motion, and the trial court subsequently entered an order confirming the state's description of its ruling and that it intended "to sentence defendant for two counts of first-degree murder as opposed to aggravated murder."

The state then initiated this appeal to challenge the trial court's order granting defendant's motion to preclude the death penalty. Because the state was unsure whether to bring the appeal in this court or in the Court of Appeals, it filed a notice of appeal in each court. It then filed a motion to determine jurisdiction in this court, and a motion to stay the proceedings in the Court of Appeals.

We write to resolve the state's motion to determine jurisdiction. To do so, we must determine whether the state can appeal the trial court's order and, if so, whether the state must bring the appeal in this court or in the Court of Appeals.

Whether a party can appeal a trial court ruling in a criminal case is controlled by statute. ORS 138.010 ("The only mode of reviewing a judgment or order in a criminal action is that prescribed by ORS 138.010 to 138.310."). State's appeals in criminal cases are governed by ORS 138.045. The legislature enacted ORS 138.045 in 2017, when it amended the statute that had governed state's appeals, *former* ORS 138.060. Or Laws 2017, ch 529, § 4.

As relevant here, ORS 138.045 provides:

> "(1)   The state may take an appeal from the circuit court, or from a municipal court or a justice court that has become a court of record under ORS 51.025 or 221.342, to the Court of Appeals from:

"(a)   An order made prior to trial dismissing or setting aside one or more counts in the accusatory instrument;

"(b)   An order allowing a demurrer;

"(c)   An order arresting the judgment;

"(d)   An order made prior to trial suppressing evidence;

"* * * * *

"(i)   An order made after a guilty finding dismissing or setting aside one or more counts in the accusatory instrument;

"* * * * *

"(2)   Notwithstanding subsection (1) of this section, when the state chooses to appeal an order described in subsection (1)(a), (b) or (d) of this section, the state shall take the appeal to the Supreme Court if the defendant is charged with murder or aggravated murder."

The state's primary argument is that the trial court's order granting defendant's motion to preclude the death penalty is appealable under ORS 138.045(1)(a) because the order is "[a]n order made *prior to trial* dismissing or setting aside one or more counts in the accusatory instrument." (Emphasis added.) The state's alternative argument is that the order is appealable under ORS 138.045(1)(i) because it is "[a]n order made *after a guilty finding* dismissing or setting aside one or more counts in the accusatory instrument." (Emphasis added.) The timing of the order matters because, if the order was made "prior to trial," then the appeal is to be brought in this court, but, if the order was made "after a guilty finding," then the appeal is to be brought in the Court of Appeals. ORS 138.045(2).

Before addressing the timing of the trial court's order, we must first determine whether the order is an order "dismissing or setting aside one or more counts in the accusatory instrument," which is a requirement for both of the paragraphs of ORS 138.045 on which the state relies.

ORS 138.045 does not specify what constitutes an order "dismissing or setting aside" one or more counts in an accusatory instrument. In *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), this court explained that the references to such orders were added to the then-existing statute

governing state's appeals in order to "broaden the state's ability to appeal orders that invalidate accusatory instruments." *Id.* at 407. As *Robertson* illustrates, such orders include orders ruling that an accusatory instrument fails to state facts that constitute an offense.

In *Robertson*, the defendant demurred to the indictment, claiming that the statute that defined the charged crime, coercion, was unconstitutionally vague. Such a claim is a claim that the indictment fails to state facts that constitute an offense. *See State v. McKenzie*, 307 Or 554, 560, 771 P2d 264 (1989) (explaining that, "[i]f a statute is constitutionally too vague, then the facts alleged in an indictment under such a statute do not and cannot constitute an offense"). The trial court entered an order allowing the demurrer, and the state appealed. On review, this court considered whether the state could appeal the trial court's order. At the time, the statute governing state's appeals did not expressly authorize appeals from orders allowing demurrers but did expressly allow appeals from orders "setting aside" indictments. Based on the history and purpose of the statute, this court concluded that a trial court's order allowing a demurrer constitutes an order "setting aside" the indictment and, therefore, may be appealed by the state. *Robertson*, 293 Or at 407.

Similarly, in *State v. Parker*, 299 Or 534, 704 P2d 1144 (1985), the defendant demurred to an indictment "on the ground that it [did not] state a crime." *Id.* at 537. The trial court issued an order allowing the demurrer, and the state appealed. On review, this court held that the state could appeal the trial court's order allowing the demurrer because it "set[] aside one count of the accusatory instrument." *Id.* at 539.

Thus, under *Robertson* and *Parker*, if a trial court issues an order ruling that an accusatory instrument, or a count in an accusatory instrument, fails to state facts that constitute an offense, the state can appeal the order as an order "setting aside one or more counts in the accusatory instrument."

We note that a claim that a count does not actually charge the crime it purports to charge is a claim that the count fails to state facts that constitute an offense. *State v.*

*Hankins*, 342 Or 258, 262-64, 151 P3d 149 (2007) (holding that a defendant may demur to an indictment on the ground that it fails to state facts that constitute an offense if the indictment does not allege all the elements of the offense it purports to charge, even if it alleges all the elements of a lesser-included offense).[3] We also note that a claim that an indictment or a count fails to state facts that constitute an offense may be raised through a demurrer, ORS 135.630(4),[4] or a motion in arrest of judgment, ORS 136.500,[5] and the state can appeal trial court orders on demurrers and motions in arrest of judgment, ORS 138.045(1)(b), (c).

---

[3] In *Hankins*, the defendant was charged with delivery of marijuana to a minor. To commit that crime, the person who delivered the marijuana had to be 18 years of age or over and at least three years older than the minor to whom the marijuana was delivered. After the close of the state's case-in-chief, the defendant moved for a judgment of acquittal, asserting that the indictment was deficient because it did not allege either that he was 18 or older or that he was at least three years older than the person to whom he allegedly delivered the marijuana. The trial court denied the defendant's motion on the ground that the defendant should have raised his challenge to the indictment through a demurrer. On review, the defendant argued that he could not have demurred to the indictment because, under ORS 135.630(4), a defendant may demur when it appears that the "facts stated [in the indictment] do not constitute an offense"; specifically, the defendant argued that he could not have demurred to the indictment because, even if the indictment did not state facts constituting the offense of delivery of marijuana to a minor, it did state facts constituting the lesser-included offense of delivery of marijuana. This court rejected that argument, holding that, even if the indictment stated facts that constituted *an* offense, the defendant could have demurred to it "on the ground that the facts stated did not constitute *the* offense that the indictment purported to charge." *Hankins*, 342 Or at 264 (emphases added).

In addition to his motion for judgment of acquittal, the defendant had filed a post-verdict motion challenging the indictment on the same ground, which the trial court also denied. On review, this court declined to address whether the trial court's ruling on that motion was error, because the defendant had not challenged that ruling on appeal. *Id.* at 267.

[4] ORS 135.630 provides:

"The defendant may demur to the accusatory instrument when it appears upon the face thereof:

"* * * * *

"(4)  That the facts stated do not constitute an offense[.]"

[5] ORS 136.500 provides:

"A motion in arrest of judgment is an application on the part of the defendant that no judgment be rendered on a plea or verdict of guilty. It may be founded on either or both of the grounds specified in ORS 135.630 (1) and (4), and not otherwise. The motion must be made within the time allowed to file a motion for a new trial, and both such motions may be made and heard as the court directs."

Having concluded that an order ruling in a defendant's favor on a claim that a count does not state an offense is an order "setting aside" the count, we turn to the question of whether defendant made such a claim in this case. As noted, defendant filed a motion titled "Motion to Preclude Death Penalty." He did not title his filing as a demurrer, a motion in arrest of judgment, or a motion to dismiss or set aside the indictment.

This court has construed the statute governing state's appeals strictly, in that it has held that the statute does not authorize the state to appeal orders other than those listed in the statute. *See, e.g.*, *State v. Sieckmann*, 251 Or 259, 261, 445 P2d 599 (1968) (dismissing the state's appeal of a trial court's order that was "erroneous" because the order was "not one of those orders specified by the legislature from which an appeal can be taken"). But, when determining whether an order is one of the types listed, this court has looked beyond the title of the filing that prompted the order; it has looked to the nature of the filing. *See, e.g.*, *McKenzie*, 307 Or at 560-61 (explaining that, when a defendant makes a motion for judgment of acquittal before a verdict on the ground that the indictment fails to state an offense, the motion should be construed as a "premature motion in arrest of judgment"); *State of Oregon v. Berry and Walker*, 204 Or 69, 72, 267 P2d 993 (1954) (holding that the defendant's objection to testimony on the ground that the statute he was accused of violating was unconstitutionally vague was "in effect a demurrer" on the ground that the indictment did not state facts sufficient to constitute a crime); *see also State ex rel Schrunk v. Bonebrake*, 318 Or 312, 314 n 2, 865 P2d 1289 (1994) (holding that a defendant's motions to "quash" indictments were properly treated as motions to "set aside" the indictments).[6]

---

[6] The Court of Appeals has done similarly. *E.g.*, *City of Toledo v. Richards*, 40 Or App 71, 75, 594 P2d 422, *rev den*, 287 Or 149 (1979) (holding that an order vacating a sentence due to the unconstitutionality of an ordinance "necessarily holds that the facts stated do not constitute an offense as there is no longer an ordinance to be violated" and, therefore, is "by its nature an order arresting judgment from which the city may appeal"); *State v. Cannon/Clark/Green/Donnelly*, 17 Or App 379, 384, 521 P2d 1326 (1974) (holding that the trial court's post-verdict ruling on the defendants' pretrial demurrers "was, essentially, an order arresting judgment on the permissible ground of failure of the indictment to state facts constituting a crime").

Here, defendant's motion to preclude the death penalty depends on what defendant has been convicted of, which in turn, depends on what the indictment charges. Defendant correctly focuses on the body of the indictment, which controls over the caption of the indictment and the titles of the counts. *See State v. Trueax*, 315 Or 396, 398, 400, 845 P2d 1291 (1993) (holding that, where the indictment was captioned "Sodomy in the Second Degree," but the body of the indictment alleged facts that constituted sodomy in the third degree, the trial court erred in convicting the defendant of sodomy in the second degree).[7] Essentially, defendant's argument is that, although the indictment purports to charge two counts of aggravated murder, in the wake of SB 1013 it actually charges two counts of the lesser-included crime of first-degree murder, and, therefore, the trial court must sentence him for two counts of that crime, which does not carry the death penalty.

Functionally, that argument is a claim that each count of the indictment fails to state facts that constitute an offense; more specifically, it is a claim that each count fails to state facts that constitute the offense it purports to charge. It is the type of argument that can be raised through a demurrer or a motion in arrest of judgment to prevent the state from proceeding on a charge when it has failed to allege all the elements of that charge (even if it has alleged all the elements of a lesser-included charge). And, as discussed above, when a trial court issues an order ruling in a defendant's favor on a claim that a count fails to state an offense, that order is an order "setting aside" the count, which can be appealed by the state. Therefore, we conclude that the state can appeal the trial court's order granting defendant's motion to preclude the death penalty.

---

[7] In *Trueax*, the defendant did not challenge the indictment. The state raised the issue of the discrepancy between the caption and the body of the indictment when the case was on appeal. As this court recounted,

"[w]ith commendable candor, the state brought the discrepancy in the indictment to the attention of the Court of Appeals, pointing out that, even though defendant had not raised the issue at trial or on appeal, the indictment could not support defendant's conviction for sodomy in the second degree, and that it was an error of law apparent on the face of the record."

315 Or at 399.

The question then becomes whether the state's appeal must be brought in this court or in the Court of Appeals. If, prior to trial, a trial court issues an order ruling that one or more counts fails to state facts that constitute an offense, the order can be appealed either as an "order made prior to trial *** setting aside one or more counts in the accusatory instrument," ORS 138.045(1)(a), or as an "order allowing a demurrer," ORS 138.045(1)(b), and, in a murder or aggravated murder case, the appeal must be brought in this court, ORS 138.045(2). If such an order is made *after a guilty finding*, it can be appealed as an "order made after a guilty finding *** setting aside one or more counts in the accusatory instrument," ORS 138.045(1)(i), or as an "order arresting the judgment," ORS 138.045(1)(c), and the appeal must be brought in the Court of Appeals.

In most cases, it will be obvious whether a ruling is "made prior to trial" or "after a guilty finding" for the purposes of ORS 138.045. But, because this case involves a bifurcated trial and the post-conviction court ordered only a new penalty-phase hearing, it is not obvious whether the trial court's order on remand was "made prior to trial" or "after a guilty finding." As recounted above, the order was made after the guilt and penalty phases of defendant's first trial but before the new penalty phase ordered by the post-conviction court. There can be no question that the motion was made and ruled on after defendant was found guilty, and that would seem to suggest that the ruling can be appealed either as post-verdict order setting aside the aggravated murder counts or as an order arresting judgment. But this court has held that, when a death penalty case is remanded for a new penalty phase, trial court orders made before a jury is empaneled for the new penalty phase may qualify as orders "made prior to trial" within the meaning of the state's appeal statute. *State ex rel Carlile v. Frost*, 326 Or 607, 616, 956 P2d 202 (1998) (so holding regarding *former* ORS 138.060 (1997), *amended and renumbered as* ORS 138.045 (2017)).

In *Carlile*, the defendant's death penalty case had been remanded for a new penalty phase. On remand, the defendant moved to suppress certain evidence and the trial court granted the motion in part. To challenge the trial

court's suppression ruling, the state filed a notice of appeal in the Court of Appeals, invoking *former* ORS 138.060(3) (1997), which authorized state's appeals of orders "made prior to trial suppressing evidence," as ORS 138.045(1)(d) does today. The Court of Appeals dismissed the state's appeal on the ground that the trial court's suppression ruling had not been made "prior to trial."

On review, this court reversed, holding that "'an order made prior to trial suppressing evidence' *** includes an order suppressing evidence before the beginning of a penalty-phase-only retrial." *Carlile*, 326 Or at 616. This court based its holding on several considerations. To begin with, this court looked to the text of the statute authorizing state's appeals, noting that the legislature had not defined the phrase "prior to trial," and that this court had previously recognized that the term "trial" can "'have a different meaning in different settings, and under different statutory provisions.'" *Id.* at 612 (quoting *State v. Hattersley*, 294 Or 592, 595, 660 P2d 674 (1983)). This court then examined the meaning of the term "trial" in two contexts. First, this court looked to the statutes governing aggravated murder cases. The court noted that the statutory scheme provides for separate guilt and penalty phases, which can have different juries if a case is remanded for a penalty phase only, in which case the new penalty-phase jury is a new "*trial* jury." *Id.* at 614 (emphasis in original) (construing *State v. Wagner*, 309 Or 5, 17-18, 768 P2d 93 (1990)).[8] Second, this court looked to the statutes governing pretrial proceedings, including ORS 135.037, which provides for omnibus hearings and requires trial courts to rule on certain motions, including motions to suppress evidence and challenges to the accusatory instrument, "prior to trial." *Carlile*, 326 Or at 614. As this court observed in *Carlile*, "[f]or that statute to apply in the context of a penalty-phase-only retrial, the phrase 'prior to trial' can mean only a time before a new jury is impaneled and sworn at the beginning of the penalty phase." *Id.* at 614-15.

---

[8] When this court decided *Carlile*, ORS 163.150(5)(a) (1997) provided that, "[i]f a reviewing court finds prejudicial error in the sentencing proceeding only," the trial court on remand could "[i]mpanel a new sentencing jury for the purpose of conducting a new sentencing proceeding" to determine whether the defendant should be sentenced to death or life in prison, with or without the possibility of parole. That provision has since been recodified at ORS 138.052(2)(a).

Finally, this court looked to its then-recent decision in *Hattersley*, in which it had construed the statute authorizing state's appeals, and concluded that the "legislature intended to correlate the state's opportunity to appeal in a criminal case with a defendant's right to avoid 'double jeopardy.'" *Carlile*, 326 Or at 615 (citing *Hattersley*, 294 Or at 598). This court noted that the legislature intended the state's appeal statute "to give the state an opportunity to obtain an answer to legal rulings limiting what it may offer in evidence, including but not limited to such rulings that result from an omnibus hearing, before presenting its case." *Carlile*, 326 Or at 615 (citing *Hattersley*, 294 Or at 597-98). And, this court further noted, if the state were not allowed to challenge the trial court's suppression ruling before the penalty phase and the new penalty-phase jury answered "no" to any of the four penalty-phase questions, then the prohibition against former jeopardy would preclude another penalty phase, leaving the state without a remedy if the trial court's suppression ruling was erroneous. *Carlile*, 326 Or at 615-16.[9] "Pulling together all those threads," this court concluded that the trial court's suppression ruling, made on remand before the new penalty-phase jury was empaneled, was made "prior to trial" for the purposes of the state's appeal statute. *Id.* at 616.

In this case, the state relies on *Carlile*, asserting that trial court orders made after a case has been remanded for a new penalty phase and before a new jury has been empaneled are orders made "prior to trial" for the purposes of the state's appeal statute. Defendant does not argue otherwise.

---

[9] In *Carlile*, this court explained:

"The concept of protection against former jeopardy applies, in a separate fashion, to the penalty phase itself. Even if a defendant is found guilty (so that the defendant can be subjected to a hearing on the appropriate penalty without being subjected to 'double jeopardy' thereby), if a sentencing jury says 'no' to any of the four penalty-phase questions, then the defendant cannot be subjected to jeopardy of the death penalty again. That is so as a matter of federal constitutional law. Thus, in law, the penalty phase is a type of 'trial' to which the concept of 'jeopardy' attaches. Moreover, when a defendant faces a penalty-phase-only retrial, the only way to assure that the state's 'interlocutory appeal opportunities *** correlate with [the] defendant's double jeopardy protections' is to hold that jeopardy attaches and the state's opportunity to appeal ceases 'when the [penalty-phase] jury is "impaneled and sworn."'"

326 Or at 616 (footnote and citation omitted; alterations in *Carlile*) (quoting *Hattersley*, 294 Or at 598).

Here, the trial court's order was made at the same point in the proceedings as the order in *Carlile*. When—as in *Carlile* and this case—a death penalty case is reopened only for a new penalty phase, the new penalty-phase hearing is like a new trial (albeit a limited one), in that it can be preceded by a new omnibus hearing, a new jury is empaneled, the parties present additional evidence to the jury, and the jury makes different fact findings, which carry former jeopardy consequences. Thus, an order like the one in this case, made prior to the empaneling of a jury for a new penalty phase, is an order made "prior to trial" for the purposes of ORS 138.045. It is made prior to the point at which jeopardy would attach for the purposes of the particular proceeding. *See, e.g.*, *Parker*, 299 Or at 539 (treating the trial court's order allowing the defendant's demurrer to one count of the indictment as one made "prior to trial," even though the effect of that order was to preclude a trial on that count).

In sum, we conclude that the trial court's order granting defendant's motion to preclude the death penalty is an order "setting aside" both counts of the indictment, in that it reduces the crimes charged from aggravated murder to first-degree murder, and we further conclude that, because the trial court issued its order after the case was remanded for a new penalty phase but before a new penalty-phase jury was empaneled, the order was made "prior to trial." Therefore, the state may appeal the order pursuant to ORS 138.045(1)(a) and, pursuant to ORS 138.045(2), the appeal must be brought in this court.

The state's motion to determine jurisdiction is granted. The court determines that it has jurisdiction of the appeal.